MODERN SECURITY LIFE INSURANCE COMPANY, SUCCESSOR IN INTEREST TO DYNAMIC SECURITY LIFE INSURANCE COMPANY, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Modern Sec. Life Ins. Co. v. Commissioner
Docket No. 31186-84.
United States Tax Court
T.C. Memo 1985-629; 1985 Tax Ct. Memo LEXIS 3; 51 T.C.M. (CCH) 188; T.C.M. (RIA) 85629; December 30, 1985. Raymond Turner, for the petitioner. Gary A. Benford, for the respondent. DRENNEN
MEMORANDUM OPINION DRENNEN, Judge: This case was assigned to Special Trial Judge Daniel J. Dinan for the purpose of hearing the parties' cross motions for summary judgment, pursuant to the provisions of section 7456(c) and (d) [1] *4 and Delegation Order No. 8, 81 T.C. XXV (1983). After a review of the record, we agree with and adopt his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE Dinan, Special Trial Judge: This case was called from the calendar for the Motions Session of the Court at Washington, D.C., on July 3, 1985, for hearing on Petitioner's Motion for Summary Judgment filed on May 15, 1985, pursuant to Rule 121 [2] and respondent's cross Motion for Summary Judgment filed on July 3, 1985. [3]
Respondent, on June 7, 1984, mailed a notice of liability to petitioner as transferee of assets of the Dynamic Security Life Insurance Company (Dynamic), an Ohio corporation, determining a deficiency in Federal income tax against petitioner, as transferee, for the year 1978 in the amount of $153,842. The issue for decision is whether Dynamic may deduct on its 1978 Federal income tax return *5 $450,000 which it paid in 1978 to Ozark National Life Insurance Company (Ozark), a Missouri corporation, pursuant to the terms of a "Modified Co-Insurance Agreement." The facts are not in dispute and may be briefly summarized as follows: Petitioner, a Missouri corporation, is the surviving corporation of a merger with Dynamic which occurred in December 1978. Ozark is, and during 1978 was, a life insurance company organized under the law of the State of Missouri. Dynamic and Ozark entered into a modified coinsurance agreement (the agreement) on December 29, 1978, which was effective as of December 31, 1978. Under the agreement, Ozark, as the ceding company, reinsured on a modified coinsurance basis (hereinafter referred to as indemnity reinsurance) with Dynamic, as the reinsurer, 9.3 percent of Ozark's liability and risk on a block of whole life insurance policies in force on December 29, 1978, which previously had been issued by Ozark, for so long as any of the reinsured policies thereafter remained in force. In accordance with the agreement, Ozark remained directly liable to the policyholders holding the covered policies. The policyholders of the covered policies were *6 not notified of the reinsurance of a portion of the risk on their policies. In accordance with the terms of the agreement, Ozark continued to collect the premiums and service the reinsured policies. The agreement provided for payment by the ceding company to the coinsurer, 9.3 percent of the net gains from operations of the reinsured business; the coinsurer agreed to pay the ceding company a ceding commission of $450,000 cash. It was also expressly agreed that the reserves and underlying assets relating to the portion of the business coinsured would remain in the possession of and the exclusive property and/or liability of the ceding company. In 1978, Dynamic paid Ozark $450,000 as a ceding commission pursuant to the terms of the agreement and deducted that amount on its 1978 Federal income tax return. It is petitioner's position that the $450,000 ceding commission was "consideration arising out of reinsurance ceded" within the meaning of section 809(c)(1) and the regulations thereunder providing for the subtraction of such consideration from premium income. Petitioner cites Beneficial Life Insurance Co. v. Commissioner,79 T.C. 627 (1982), in which we held, *7 among other issues, that allowances paid the ceding company by the reinsuring company in an indemnity reinsurance transaction are analogous to currently deductible underwriting expenses to the reinsuring company. Respondent contends that the $450,000 payment made by Dynamic to Ozark constitutes an investment in the nature of a capital expenditure or deferred expense which must be amortized over the reasonably anticipated life of the policies. Respondent's brief in support of his capitalization-amortization argument, with the exception of one contention which we address, infra, might well have been entitled "Beneficial Life Revisited." It is substantially a mirror copy of the brief filed by him in Beneficial Life,supra. Respondent's argument in this case was fully considered and rejected in Beneficial Life. We are convinced that our analysis there was sound and adhere to it in this case. As we said in Beneficial Life, at page 647: Respondent cites to us numerous cases which require capitalization and amortization of acquisition expenses. However, such cases apply where an asset is acquired, not when insurance is sold. * * * In Beneficial *8 Life, we concluded that the tax treatment of amounts paid by a reinsuring company to a ceding company in an assumption reinsurance transaction is treated differently from a like payment in an indemnity reinsurance transaction because the Code required that they be treated differently. 79 T.C. at page 645, 646: The reason for the divergence simply is that the Code, itself, affords an entirely different analysis. Basically, an assumption reinsurance transaction is treated as a sale by the ceding company to the reinsuring company. Thus, the reinsuring company must amortize the cost of the business acquired over that business' useful life (sec. 1.817-4(d)(2)(ii)(B), Income Tax Regs.), and the ceding company may deduct any consideration paid the reinsuring company for assuming liabilities. See sec. 809(d)(7) and sec. 1.809-5(a)(7), Income Tax Regs.
However, an indemnity reinsurance transaction is not treated as a sale. Rather, it is treated as the ceding company's purchase of insurance from the reinsuring company. While we are unable to find such distinction makes a difference in determining that the reinsuring company receives consideration equal to the reserves *9 assumed, it does make a difference in the treatment of the amount the reinsuring company pays the ceding company. Section 809(c)(1) includes in the reinsurance income the consideration received with respect to assuming another's contract liabilities; however, it subtracts from that amount "return premiums, and premiums and other consideration arising out of reinsurance ceded." Section 1.809-4(a)(1)(ii), Income Tax Regs., defines "return premiums" as follows: (ii) The term "return premiums" means amounts returned or credited which are fixed by contract and do not depend on the experience of the company or the discretion of the management. Thus, such term includes amounts refunded due to policy cancellations or erroneously computed premiums. Furthermore, amounts of premiums or other consideration returned to another life insurance company in respect of reinsurance ceded shall be included in return premiums * * * [Emphasis supplied in original.] [25]
Thus, the reinsuring company may subtract from income any "consideration returned" to the ceding company with respect to the reinsurance ceded. See S. Rept. 291, 86th Cong., 1st Sess. (1959), 1959-2 C.B. 770, 809. *10 Thus, the amounts petitioner "returned" to the respective ceding companies may be subtracted from the consideration received from the ceding company. Such results, of course, in only the actual cash consideration received from the ceding companies being part of petitioner's section 809(c)(1) income. However, we believe our analysis to be a more complete route to that end. [Footnotes omitted except where relevant.] Respondent informs us that in Beneficial Life we erred in relying on section 809(c)(1) when we held that the reinsuring company may in an indemnity reinsurance transaction subtract from income any "consideration returned" to the ceding company with respect to the reinsurance ceded. We are told (Respondent's Brief pp. 15, 16): The reduction allowed by IRC sec. 809(c)(1) for "premiums and other consideration arising out of reinsurance ceded" is an allowance in the case of indemnity reinsurance analogous to the deduction allowed under IRC sec. 809(d)(7) *11 in the case of assumption reinsurance. The reduction allows the reinsured to reduce its income by the amount transferred to the reinsurer. Just as IRC sec. 809(d)(7) has no application to amounts paid by a reinsurer for assumption reinsurance, the language of IRC sec. 809(c)(1) in question has no application to amounts paid by the reinsurer to acquire indemnity reinsurance business. Thus, the critical language of IRC sec. 809(c)(1) (i.e., "premiums and other consideration arising out of reinsurance ceded") has no application to the petitioner in the present case since it was the reinsurer and not the reinsured. Respondent's argument disregards the basis for our holding in Beneficial Life. Neither the lenguage of section 809(c)(1), the regulations published pursuant thereto, nor the legislative history remotely suggests the restrictive interpretation advanced by respondent. As stated, supra, we adhere to Beneficial Life and our opinion therein is dispositive of the issue raised in this case. Petitioner's motion for summary judgment will be granted. Respondent's motion for summary judgment *12 will be denied. An appropriate order and decision will be entered.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
3. On May 15, 1985, petitioner also filed a Motion to Correct Petitioner's Name. That motion will be granted by separate order.↩
25. For purposes of sec. 809(c)(1), "reinsurance ceded" includes indemnity insurance arrangements, but does not include assumption reinsurance arrangements.Sec. 1.809-4(a)(1)(iii), Income Tax Regs.↩